# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION
# www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| | Subchapter V |
| PB RESTAURANTS, LLC, | Case No. 6:25-bk-01957-LVV |
| | *Lead case* |
| | *Jointly Administered with* |
| PLANET EXPRESS (LAX), LLC, | Case No. 6:25-bk-01958-LVV |
| TIMES SQUARE BUFFET, LLC, | Case No. 6:25-bk-01959-LVV |
| Debtors. | |

### MAIN STREET CAPITAL CORPORATION'S *EMERGENCY* MOTION TO CONTINUE CONFIRMATION HEARING SET FOR JULY 1, 2025

> **Main Street Capital Corporation respectfully requests that an emergency hearing on the relief requested in this Motion be held on or before June 27, 2025.**

Main Street Capital Corporation ("Main Street") files this *Emergency Motion to Continue Confirmation Hearing Set for July 1, 2025* (the "Motion"), requesting to continue the hearing to consider confirmation of the *Joint Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 36] (the "Plan") filed by the above captioned debtors (the "Debtors") and to continue related deadlines. In support of the Motion, Main Street respectfully states the following:

1

17286213

## PRELIMINARY STATEMENT

1. Main Street has filed a Claim[1] asserting at least $43 million. The merits of that Claim go directly to the good faith of the Debtors in filing their Plan under subchapter V of the Bankruptcy Code because the Debtors were aware of the basis for the Claim and that some significant portion of the Claim was validly owed. The allegations in the Claim also indicate significant causes of action that the PB Restaurants estate may hold against its affiliates and insiders, such that the Plan also does not satisfy the best interests of creditors test. And, despite the knowledge of the Claim's underlying facts and merits, the Debtors did not provide notice of these subchapter V bankruptcy cases to Main Street until only five calendar days before the 341 Meeting.

2. Further, on June 23, 2025, the Debtors filed an objection to Main Street's Claim. This last-minute objection not only requires Main Street to now prepare and file an emergency motion to estimate under Bankruptcy Rule 3018, but the timing of the Claim Objection only ten days after Main Street filed the Claim and eight days before confirmation is also a tacit acknowledgment from the Debtors that the merits of the Claim are relevant to confirmation.

---

[1] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Motion.

17286213

3. Accordingly, Main Street requests that the Court enter a scheduling order continuing the Confirmation Hearing by at least sixty days so that Main Street can complete discovery related to its Claim and potential estate causes of action, file a motion for standing if necessary, and pursue its objection to the Plan.

## RELIEF REQUESTED

4. Main Street requests that the Court adjourn the confirmation hearing scheduled for July 1, 2025, at 2:00 p.m. (Eastern Time) (the "Confirmation Hearing") and extend the deadline to vote on and object to the Plan by at least sixty days, and enter a scheduling order with respect to same.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Middle District of Florida (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. The statutory predicates for the relief sought herein are section 105(a) of Title 11 of the United States Code ("Bankruptcy Code") and rules 2002, 3017.2, 3018, and 9006 of the Federal Rules of Bankruptcy Procedure and rules 2002-1, 3018-1, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules").

## BACKGROUND

A.  **The Bankruptcy Filing and Procedural History**

8. On April 4, 2025 (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors did not provide notice of the commencement of these cases to Main Street until April 30, 2025,[2] at the earliest [Docket No. 33].

9. The section 341 meeting of creditors (the "341 Meeting") was held May 5, 2025. The Debtors initiated the service to Main Street of notice of the bankruptcy cases and of the 341 Meeting twenty-six days after the Petition Date and only five calendar days[3] prior to the 341 Meeting.

10. On May 7, 2025, the Debtors filed the Plan. On May 12, 2025, the Court entered the *Order (I) Scheduling Hearing on Confirmation of Plan of Reorganization, (II) Setting Related Deadlines, and (III) Setting Deadlines for Filing Administrative Expense Applications* [Docket No. 38] (the "Scheduling Order"). The Scheduling Order set the deadline to object to confirmation of the Plan as June

---

[2] The Certificate of Service [Docket No. 33] provides that the *Order Directing Joint Administration of Cases* [Docket No. 17] and the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 11] were sent by first class mail to Main Street on April 30, 202[5]. Main Street has been unable to confirm whether it actually received the filings.

[3] April 30, 2025, was a Wednesday, and May 5, 2025, was a Monday. If the Court were to consider the three additional days for most responses under Rule 9006(f), Main Street effectively received notice of the 341 Meeting on the day of its conclusion, to the extent it ever may have received such notice.

17286213

24, 2025, and scheduled the Confirmation Hearing for July 1, 2025, at 2:00 p.m. (Eastern Time).

11. The deadline to file proofs of claim in these cases was June 13, 2025. Main Street timely filed Proof of Claim No. 21, asserting a claim (the "Claim") against Debtor PB Restaurants, LLC in the amount of at least $43,713,278.00. The Claim and the events underlying the Claim are summarized below:

12. Main Street is a significant creditor of Debtor PB Restaurants and of BUCA C LLC ("BUCA C"), which filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Northern District of Texas, Case No. 24-80058. At all material times, Debtor PB Restaurants owned, through one or more direct or indirect subsidiaries, the majority of the equity interests in BUCA C.

13. In 2015, Main Street, as a lender and administrative and collateral agent, entered into a loan agreement with BUCA C (the "Loan Agreement"). Contemporaneously, BUCA C and Debtor PB Restaurants entered into an Accounting, Management and Administrative Services Agreement (the "Services Agreement"); and BUCA C, Main Street, and Debtor PB Restaurants entered into a Management Fee Subordination Agreement (the "Subordination Agreement", and together with the Services Agreement, the "Agreements"). Debtor PB Restaurants breached the Agreements and its fiduciary duties to Main Street and BUCA C, all

for the benefit of its insiders and affiliates.[4]

14. **Subordination Agreement Breaches**: As more fully described in the addendum attached to the Claim, Debtor PB Restaurants breached the Subordination Agreement by receiving management fees and expense reimbursements to which it was not entitled while BUCA C and its other borrowers were in default under the Loan Agreement, and by initiating or permitting other prohibited transfers to or offsets with itself or affiliates of PB Restaurants. Such improper payments include at least: (1) $34,578,571 in expense-reimbursement payments and other prohibited transfers over the period of September 2023 through July 2024; (2) an undetermined amount in improper outflows and offsets labeled as "Funding to Shared Services" over the period of October 2022 through August 2023; and (3) approximately $4,763,006 in management fees for indirect expenses that should have been deferred. Based on information received and Debtor PB Restaurants' own schedules and statements of financial affairs [Docket No. 32],[5] Main Street believes significant sums from these improper payments were ultimately sent by Debtor PB Restaurants

---

[4] The Chapter 7 Trustee for the estates of BUCA C and its debtor affiliates filed Proof of Claim No. 20 against Debtor PB Restaurants, estimating damages of $10 million related to breaches under the Services Agreement and breaches of the duties of loyalty and care owed to BUCA C.

[5] For example, Debtor PB Restaurants lists only a meager $1,090 in cash and financial assets on its Schedule A/B [Docket No. 32], yet the Debtors' own Combined Statement of Cash Flows indicates $167,000 in cash at Debtor PB Restaurants as of March 31, 2025 [Docket No. 21]. Further, information provided to Main Street evidences $34,578,571 in expense-reimbursement payments and other transfers over the period of September 2023 through July 2024, and $4,763,006 of management fees for indirect expenses over the period of October 2022 through March 2024.

17286213

to other affiliates of the Debtors or their insiders, resulting in extremely valuable causes of action held by the Debtor PB Restaurants' estate.

15. **Services Agreement Breaches**: Those improper payments, transfers, and/or offsets—a combined amount of at least $34,578,571, but potentially up to $55 million or more—were also in violation of the Services Agreement. Also related to the Services Agreement, Debtor PB Restaurants breached its fiduciary duties of loyalty and care, including by diverting bus-tour or group sales toward affiliates of Debtor PB Restaurants or its insiders, and related canceled reservations, and by failing to timely pay rent to third-party landlords. Those breaches resulted in damages of approximately $57,642 and $839,974, respectively.

16. **Gift Card Revenue Misappropriation**: Debtor PB Restaurants misappropriated intercompany funds by failing to properly allocate to BUCA C certain revenues from a gift-card program administered by Mealz Dining Pass, LLC (a company affiliated with Debtor's ultimate principal, Robert Earl). Main Street conservatively estimates damages of at least $8,237,091 related to this program.

17. **Additional Breaches Under Investigation**: Main Street is still investigating the nature and extent of claims it may have against Debtor PB Restaurants, including those related to Debtor PB Restaurants' failure to transfer, maintain, and/or obtain certain intangible property, and other breaches of fiduciary duties.

18. The ultimate amount of the Claim is expected to be much higher once certain transfers have been fully reconciled and investigated. The Claim is attached hereto as **Exhibit A** and incorporated herein by reference.

19. Main Street served Debtor PB Restaurants with discovery requests on June 17, 2025, and requested depositions of any witnesses who support confirmation. Debtor PB Restaurants initially offered depositions the day before confirmation and indicated it would respond to the document requests timely but refused Main Street's request to continue the Confirmation Hearing and related deadlines. To date, PB Restaurants has not produced any documents in response to the discovery requests.

20. Main Street will file an objection to the Plan on the grounds that the Plan was not filed in good faith and is not in the best interest of creditors. Further, Main Street is investigating insider transfers and transactions potentially worth millions of dollars, the recovery of which would benefit all unsecured creditors, and is also investigating the allegedly secured credit facility between Debtor PB Restaurants and PHL Holdings, LLC (the "PHL Facility") that will be converted to equity in the Plan. Main Street has served Debtor PB Restaurants with requests for production related to both of these investigations, and seeks to schedule related depositions as well. Main Street will likely seek derivative standing to pursue claims and causes of action on behalf of PB Restaurants for the benefit of the estate.

21. Finally, on June 23, 2025, the Debtors filed the *Debtors' Objection to Allowance of Claim of Main Street Capital Corporation* [Docket No. 59] (the "Claim Objection"). Main Street must now—the evening before the voting deadline—prepare and file an emergency motion to estimate the Claim for voting purposes under Bankruptcy Rule 3018. The Claim Objection, however, also highlights the need for a continuance: By filing the Claim Objection the week before the Confirmation Hearing, the Debtors have implicitly conceded that a determination of the merits of the Claim is crucial to any confirmation of the Plan. The Court should now require that the merits of the Claim are addressed prior to or at confirmation, which further necessitates an adjournment of the Confirmation Hearing.

22. Accordingly, Main Street requests that the Court continue the Confirmation Hearing and related deadlines for at least sixty days and enter a scheduling order for same so that Main Street can complete discovery with the Debtors and the Court can rule on the merits of Main Street's Claim and the standing motion, if any, on or before the Confirmation Hearing.

## BASIS FOR RELIEF

**II. Additional Time is Warranted to Investigate Causes of Action, File a Standing Motion, Pursue a Confirmation Objection, and Allow or Estimate the Claim.**

23. Several key matters remain unresolved that affect Main Street's and other creditors' rights and the confirmability of the Plan:

24. ***Ongoing Discovery and Investigation of Insider Transfers.*** Main

Street is investigating the PHL Facility and transfers and transactions to insiders and/or affiliates involving tens of millions of dollars.  Recovery of such transfers and avoidance or recharacterization of the PHL Facility would affect distributions available to unsecured creditors, yet the Debtors are not considering these causes of action.  The results of those actions would also bear on the Debtors' eligibility for relief under subchapter V and whether the Plan meets the good faith requirement of section 1129(a)(3) and the best interests test of section 1129(a)(7).  Creditors must know the extent and nature of the transfers and transactions before voting or being bound by the Plan, as such transfers and transactions may warrant dismissal or conversion.  Specifically, until the investigations are completed, it cannot be known whether the Plan is in the best interests of creditors:  Creditors may be better off in a Chapter 7 liquidation, where a trustee could pursue causes of action against the Debtors' insiders and affiliates, which may provide greater distributions than the limited disposable income currently proposed under the Plan.  For these reasons, Main Street may file a motion seeking standing to pursue any claims against insiders and affiliates for the benefit of the estates.

25.    As part of these ongoing investigations, Main Street served Debtor PB Restaurants with discovery requests on June 17, 2025, and requested depositions of any witnesses who support confirmation.  However, there is not enough time to complete discovery prior to the Confirmation Hearing on July 1, and to date, the

17286213

Debtors have not made any production of documents in response to those requests. A continuance will permit completion of the investigations and resolution of any necessary motion for standing to pursue the claims for the benefit of the estates. By helping the Court to address threshold issues in advance of a rescheduled confirmation hearing, the continuance would also ensure the efficient administration of these cases for the benefit of all parties in interest.

26. ***Main Street's Claim and the Plan's Lack of Good Faith***. The investigations bear directly on the merits of the Claim. The merits, showing that Debtor PB Restaurants filed a case under subchapter V when it has tens of millions of dollars in non-affiliate debts owed to Main Street, in turn, show that the Plan was not filed in good faith as required under section 1129(a)(3) of the Bankruptcy Code. As indicated above, the allegations in the Claim also bear on the best-interests test of section 1129(a)(7), as the allegations indicate potential causes of action against the Debtors' affiliates and insiders that would be available for the benefit of the estates. Continuing the Confirmation Hearing and related deadlines will allow necessary discovery to proceed to a point where issues can be narrowed, avoiding piecemeal or last-minute disputes at confirmation and ensuring that creditors are provided with the information needed to make informed decisions with respect to the Plan.

27. ***Estimation and Determination of Main Street's Claim***. Main Street

holds an unliquidated claim in an amount of at least $43,713,278.00. Under Local Rule 3018-1(e), the Claim is allowed in the amount of the Claim for voting purposes; accordingly, Main Street did not intend to estimate the Claim for voting purposes. However, on the eve of the voting deadline, the Debtors filed the Claim Objection. Now, Main Street must prepare and file a motion to estimate the Claim under Bankruptcy Rule 3018. Resolution of that motion will determine Main Street's entitlement to vote on the Plan. Of importance to all creditors, however, is that, given the amount of Main Street's claim (alone, 13 to 20 times greater than the Plan's estimate of General Unsecured Claims), its allowance should be determined by the Court prior to confirmation, since confirmation cannot proceed fairly without knowing a claim amount that will upend the already minimal *pro rata* distributions proposed by the Debtors and the Claim's merits also bear on the good faith filing of a subchapter V plan of reorganization.

28.  These are significant matters to be addressed, and they impact all unsecured creditors, not just Main Street. Further, the Plan's financial projections show that these cases are not of the "melting ice cube" variety—the Debtors are not at risk of administrative insolvency or otherwise burning cash so as to justify a rushed confirmation process, especially one requiring at least two depositions the day before the Confirmation Hearing.

17286213

I. **The Confirmation Hearing Should be Continued to Cure Prejudice From Inadequate Notice.**

29. Under Bankruptcy Rule 3017.2, in a case under Subchapter V of Chapter 11 without a disclosure statement, the court must set a time within which holders of claims and interests may accept or reject the plan, and a date for the hearing on confirmation. *See* Fed. R. Bankr. Procedure 3017.2. Bankruptcy Rule 9006(b)(1) provides that "the court may—at any time and for cause—extend the time to act if: (A) with or without a motion or notice, a request to extend is made before the period (or a previously extended period) expires." Fed. R. Bankr. Procedure 9006(b)(1).

30. Courts have discretion to manage their docket and set hearings as necessary to further the ends of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). This includes continuing hearings to ensure adequate notice and efficient administration of the case. *See id.* ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or ***to prevent an abuse of process***.") (emphasis added).

31. Here, the Debtors filed their petitions on April 4, 2025, but did not initiate service of notice to Main Street until April 30, 2025—twenty-six days after

13

17286213

the Petition Date and only five calendar days before the section 341 meeting on May 5, 2025. The Debtors knew Main Street would be a creditor in these bankruptcy cases: Debtor PB Restaurants was in prepetition default under the Agreements, and Main Street and PB Restaurants or its affiliates had, prior to the Petition Date, been exchanging information and transaction activity related to the Agreements and BUCA C. Further, Debtor PB Restaurants had participated in the BUCA C bankruptcy case and thus knew that Main Street was represented by Porter Hedges LLP, yet Debtor PB Restaurants did not serve counsel with notice of these subchapter V bankruptcy cases. In fact, the first apparent evidence of service on Main Street's counsel relates to the Claim Objection, which was sent on June 23, 2025, by first-class mail to Porter Hedges LLP's office, despite counsel for Main Street having corresponded directly with Debtors' counsel via email.

32.     Despite that knowledge, the Debtors waited until just three business days before the 341 Meeting to *mail* notice of the cases, and did not include Main Street's counsel in such service. That delay deprived Main Street of a fair opportunity to participate at the outset of these cases, assess its rights with respect to the Plan and the Debtors' self-designated subchapter V status, and prepare timely objections. Due process requires that creditors have reasonable time to evaluate claims, pursue discovery, and develop necessary evidence before being bound by a plan. A continuance is therefore necessary to cure the prejudice caused by the

delayed notice and to afford Main Street a full and fair opportunity to protect its interests prior to confirmation of any plan.

### III. Relief Promotes Efficient Administration and No Undue Delay Will Result.

33. A continuance will not unduly delay the Debtors' cases or prejudice other stakeholders. Instead, it will promote efficient administration by ensuring that critical issues—investigation related to valuable estate causes of action, discovery related to same, the validity and amount of substantial claims, and threshold eligibility questions—are addressed or narrowed before confirmation. Further, it will also ensure proper disclosure to all creditors voting on the Plan, particularly with respect to the best interests of creditors test and the causes of action the estates may hold. *See* Plan, Art. VII.C ("The Debtors are not currently able to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action."); *see also* Plan, Exhibit A (liquidation analysis omitting any valuation of estate causes of action).

34. This approach conserves judicial and party resources while focusing the Confirmation Hearing on proper confirmation issues that have been properly analyzed. Accordingly, Main Street respectfully requests that the Court continue the Confirmation Hearing currently set for July 1, 2025, and related deadlines by at least sixty days, so that discovery and investigations can conclude, the standing motion,

if any, can be resolved, the Court can estimate or finally determine the Claim, and all parties can meaningfully participate in a fair and informed confirmation process.

Dated: June 23, 2025

By: /s/ *Matthew I. Kramer*
Joshua W. Wolfshohl (pending admission *pro hac vice*)
Texas Bar No. 24038592
M. Shane Johnson (pending admission *pro hac vice*)
Texas Bar No. 24083263
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002-2764
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email:   jwolfshohl@porterhedges.com
            sjohnson@porterhedges.com

-and-

Matthew I. Kramer
Florida Bar No.: 0937231
**WEINBERG, WHEELER, HUDGIN, GUNN & DIAL, LLC**
255 South Orange Avenue, Suite 1260
Orlando, Florida 32801
Telephone: (305) 455-9504
Facsimile: (305) 455-9501
Email: mkramer@wwhgd.com

*Counsel to Main Street Capital Corporation*

17286213

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the MAIN STREET CAPITAL CORPORATION'S EMERGENCY MOTION TO CONTINUE CONFIRMATION HEARING SET FOR JULY 1, 2025 was served via electronic transmission to all parties registered with CM/ECF to receive electronic notices and interested non-CM/ECF users to receive to USPS on the dates indicated below.

Dated: June 23, 2025

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Matthew I. Kramer*
Matthew I. Kramer
Florida Bar No.: 0937231
255 South Orange Avenue, Suite 1260
Orlando, Florida 32801
Telephone: (305) 455-9504
Facsimile:  (305) 455-9501
Email: mkramer@wwhgd.com

17286213

## SERVICE LIST

United State Trustee
Wanda D Murray
United States Department of Justice
400 West Washington Street
Ste 1100
Orlando, FL 32801
Email: wanda.murray@usdoj.gov

R Scott Shuker
Counsel for Debtor
Shuker & Dorris, P.A.
121 South Orange Avenue, Suite 1120
Orlando, FL 32801
bankruptcy@shukerdorris.com

Andrew Layden
Subchapter V Trustee
200 South Orange Avenue
Ste 2300
Orlando, FL 32801
alayden@bakerlaw.com

17286213